STATE OF CONNECTICUT *v.* AUDREY R. LONGO
(AC 27600)

Bishop, Harper and Robinson, Js.

Argued January 16—officially released April 1, 2008

*Guy P. Soares*, with whom was *Salvatore C. DePiano*, for the appellant (defendant).

*Bruce R. Lockwood*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Roslyn Fleisher*, former senior assistant state's attorney, for the appellee (state).

ROBINSON, J. The defendant, Audrey R. Longo, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2005) § 14-227a (a).[1] On appeal, the defendant claims that the court improperly (1) denied her motion for a judgment of acquittal and (2) permitted the jury to consider certain expert testimony. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 17, 2005, at approximately 1:17 a.m., Darin Pavlik, a Connecticut state police trooper, observed a motor vehicle on Route 8 in Trumbull weaving back and forth and coming out of the traffic lane on three occasions. Pavlik effectuated a traffic stop and requested the operator of the vehicle, the defendant, to provide her driver's license, registration and paperwork. Pavlik observed that the defendant's eyes were bloodshot and detected a strong odor of alcohol coming from the inside of the vehicle. He asked the defendant where she was coming from and whether she had had anything to drink. She stated that she had been at a restaurant in Fairfield and that she had consumed two glasses of wine. She also denied being under the influence of any medication.

---

[1] General Statutes (Rev. to 2005) § 14-227a (a) provides in relevant part: "Operation while under the influence or while having an elevated blood alcohol content. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight."

Pavlik then conducted three standard roadside sobriety tests.[2] The defendant failed all three tests. On the basis of the defendant's performance on the three sobriety tests, Pavlik placed her under arrest. He returned to the state police barracks with the defendant and observed her for a period of fifteen minutes. During questioning, the defendant stated that she had started drinking at 9:15 p.m., had two vodka drinks and was returning from a restaurant in Bridgeport

The defendant then agreed to take a breath test on the Intoxilyzer 5000.[3] Her first test, conducted approximately fifty-eight minutes after Pavlik had stopped her, reported a blood alcohol content of 0.159 percent. The defendant subsequently took a second breath test with a result of 0.143 percent.

The state charged the defendant with violating subdivisions (1) and (2) of § 14-227a (a).[4] The jury found the defendant guilty with respect to both subdivisions. Following this verdict, the court stated: "The defendant has now been convicted of two counts of operating under the influence. The court is of the opinion that those two counts merge for purposes of sentencing into a single count. I don't believe there is any disagreement with counsel of that issue?" Both the prosecutor and defense counsel acknowledged on the record that they

[2] Pavlik testified that he conducted the horizontal gaze nystagmus test, the one leg stand test and the walk and turn test.

[3] Pavlik testified that the calibration and internal checks of the Intoxilyzer 5000 indicated that the machine was working properly at the time of the defendant's breath tests.

[4] The state also charged the defendant with violating General Statutes § 14-236, which provides in relevant part: "When any highway has been divided into two or more clearly marked lanes for traffic, (1) a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has ascertained that such movement can be made with safety . . . ." After the jury returned its verdict, the court found the defendant guilty of this traffic infraction. It then granted her an unconditional discharge as to that count.

agreed with the court with respect to the merger of the two counts.

The court sentenced the defendant to a term of six months imprisonment, execution suspended, one year of probation with special conditions and a $1000 fine. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the court improperly denied her motion for a judgment of acquittal. Specifically, she argues that the state "failed to provide any evidence or testimony as to whether the defendant had an elevated blood alcohol content by *weight*. The only evidence of elevated blood alcohol was presented by the state in the form of volume and not weight as required by the statute." (Emphasis in original.) As a corollary to this claim, the defendant also maintains that the court's failure to grant her motion for a judgment of acquittal allowed the jury impermissibly to consider the testimony from the state's toxicologist regarding the result of the Intoxilyzer tests.

Even if we assume arguendo that the defendant's argument is valid with respect to the sufficiency of the evidence as to the "per se" subdivision of § 14-227a (a),[5] we conclude that, as a result of the merger of the convictions under both subdivisions, the defendant's conviction with respect to the "behavioral" subdivision, (a) (1), remains valid and in effect. In other words, because the state presented sufficient evidence to demonstrate that the defendant had operated a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1), we need not consider the

[5] We previously have described General Statutes § 14-227a (a) (1) as the "behavioral" subdivision and § 14a-227a (a) (2) as the "per se" subdivision. See *State* v. *Barber*, 42 Conn. App. 589, 595, 681 A.2d 348 (1996); *State* v. *Gilbert*, 30 Conn. App. 428, 437, 620 A.2d 822 (1993), aff'd, 229 Conn. 228, 640 A.2d 61 (1994).

defendant's claim that the state failed to produce any evidence of an elevated blood alcohol content by weight. See *State* v. *Pulaski*, 71 Conn. App. 497, 505–506, 802 A.2d 233 (2002). Accordingly, we expressly decline to consider the defendant's first issue on appeal.

We conclude that there was sufficient evidence to support the defendant's conviction of violating § 14a-227a (a) (1).[6] The jury heard evidence that Pavlik observed the defendant's vehicle weaving out of a traffic lane on three occasions. The defendant's eyes were bloodshot, and Pavlik detected a strong odor of alcohol coming from inside the defendant's vehicle. The defendant initially told Pavlik that she had been coming from Fairfield and had two glasses of wine; later, she stated that she had been driving from Bridgeport and had consumed two vodka drinks. The defendant also failed three roadside sobriety tests administered by Pavlik. On the basis of this evidence, we conclude that there was sufficient evidence for the jury to find the defendant guilty of driving under the influence of liquor in violation of the behavioral subdivision of § 14-227a (a).[7]

---

[6] In her brief, the defendant argues that aside from the testimony of the state's toxicologist, "the state failed to provide any credible evidence that [her] physical or mental capabilities had been impaired to such a degree that she no longer had the ability to drive a vehicle with the cautious characteristic of a sober person of ordinary prudence under the same or similar circumstances." We interpret this statement as a challenge to the sufficiency of the evidence with respect to the behavioral count of the information.

During the trial, defense counsel conducted a spirited and strenuous attack on Pavlik's testimony through cross-examination. Nevertheless, "[t]he determination of the credibility of a witness is solely the function of the jury. . . . It is the trier of fact which determines the credibility of witnesses and the weight to be accorded their testimony." (Citation omitted; internal quotation marks omitted.) *State* v. *Iban C.*, 275 Conn. 624, 634, 881 A.2d 1005 (2005). In other words, it was for the jury, and not a court, to determine whether Pavlik's testimony was credible.

[7] "Driving while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quota-

The defendant also claims that the court's failure to grant her motion for a judgment of acquittal allowed the jury impermissibly to consider the testimony from the state's toxicologist regarding the result of the Intoxilyzer tests in its assessment of the evidence regarding the second or behavioral count. She relies specifically on § 14-227a (c), which provides in relevant part: "In any prosecution for a violation of subdivision (1) of subsection (a) of this section, reliable evidence respecting the amount of alcohol in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's blood, breath or urine, otherwise admissible under subsection (b) of this section, shall be admissible only at the request of the defendant."[8] Although not stated clearly in the defendant's brief, she appears to argue that the court improperly admitted into evidence her blood alcohol content as determined by the chemical analysis of her blood and that by not granting her motion for a judgment of acquittal, the jury was permitted to consider this evidence as to both counts. Thus, the defendant appears to claim that she was prejudiced by this scientific evidence, even though the court merged both counts. We conclude that this argument must fail for three reasons. First, the defendant failed to brief it adequately. Second, the claim is not preserved. Third, even if the issue had been briefed properly and preserved, it would fail on the merits.

The following additional facts are necessary for our discussion. Robert H. Powers, the director of controlled substances in the toxicology laboratory for the department of public safety testified on behalf of the state. Given the results of the defendant's blood alcohol tests,

tion marks omitted.) *State* v. *Sunila*, 98 Conn. App. 847, 852, 911 A.2d 773 (2006).

[8] It is undisputed that the defendant never requested that the results of the chemical analysis of her blood be admitted into evidence.

Powers extrapolated her blood alcohol content to have been approximately 0.185 percent at the time she was operating her motor vehicle.

We begin by setting forth the applicable standard of review. "[O]ur standard of review for the trial court's evidentiary rulings depends on whether the claimed error is of constitutional magnitude. . . . [I]f an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Ramirez*, 101 Conn. App. 283, 286–87, 921 A.2d 702, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007), cert. denied, 552 U.S. 1109, 128 S. Ct. 895, 169 L. Ed. 2d 747 (2008); see also *State* v. *Ortiz*, 101 Conn. App. 411, 427, 922 A.2d 244, cert. denied, 283 Conn. 911, 928 A.2d 538 (2007).

The defendant has failed to brief which test applies for determining whether Power's testimony was harmful. It is well established that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Blango*, 103 Conn. App. 100, 116 n.11, 927 A.2d 964, cert. denied, 284 Conn. 919, 933 A.2d 721 (2007); see also *State* v. *Klinger*, 103 Conn. App. 163, 170, 927 A.2d 373 (2007).

Second, we note that the defendant failed to preserve this issue or request review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine embodied in Practice Book § 60-5. It is

axiomatic that we do not consider unpreserved evidentiary claims. See *State* v. *Epps*, 105 Conn. App. 84, 98, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008).[9] Further, we do not engage in a level of review, such as *Golding* or plain error, when it has not been requested by a party. See *State* v. *Klinger*, supra, 103 Conn. App. 169 ("[w]hen the parties have neither briefed nor argued plain error [or *Golding* review], we will not afford such review" [internal quotation marks omitted]).

Third, even if we were to consider the merits of the defendant's argument, we would conclude that it is without merit. During its charge to the jury, the court stated: "A person is under the influence of an intoxicating liquor when, as a result of drinking such a beverage, that person's mental, physical or nervous processes have become so affected that the person lacks to an appreciable degree the ability to function properly in relation to the operation of such person's motor vehicle. *Please note that with respect to this issue, and in deciding on your verdict as to [the behavioral count], you cannot consider the results of any chemical tests from the Intoxilyzer as evidence of the defendant's guilt. That evidence was offered for a limited purpose only and is admissible only with respect to the allegations contained in [the per se count] of the information.*" (Emphasis added.)

---

[9] The defendant did not raise an objection when Powers testified that the defendant's blood alcohol content would have been approximately 0.185 percent at the time Pavlik stopped her vehicle. After the state rested, counsel for the defendant moved for a judgment of acquittal. The court denied this motion. Counsel then requested that the state be precluded from asking the defendant's toxicologist "any questions regarding the weight of alcohol by volume or by weight because at this point it severely prejudices the outcome of this trial with this jury knowing that an appeal may be forthcoming on the second count." The court declined to issue a "blanket prohibition against certain areas of inquiry" until the witness testified. The defendant ultimately did not offer the testimony of a toxicologist as her expert witness.

The court instructed the jury that it could consider and use the results of the chemical analysis of the defendant's blood only with respect to the per se count. "[I]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions." (Internal quotation marks omitted.) *State* v. *Necaise*, 97 Conn. App. 214, 225, 904 A.2d 245, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006); see also *State* v. *Howard*, 88 Conn. App. 404, 418, 870 A.2d 8 (jury presumed to follow law as instructed by court), cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005). We previously have concluded that appropriate limiting instructions regarding the use of chemical analysis serve as the proper safeguard in cases in which a defendant is charged with violating both subdivisions of § 14-227a (a). See *State* v. *Gracia*, 51 Conn. App. 4, 14–15, 719 A.2d 1196 (1998). Because the defendant has failed to demonstrate that the jury disobeyed the court's clear and explicit limiting instruction, we would conclude that any error with respect to the per se count was harmless as to the conviction on the behavioral count.

The judgment is affirmed.

In this opinion the other judges concurred.